UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:04CV-P566-H

BERNARD BRUCE PERTEE                                                           PLAINTIFF

V.

GEORGE DETELLA, et al.                                                          DEFENDANTS

**MEMORANDUM OPINION**

Defendant, Kevin Sidebottom ("Sidebottom"), has moved for summary judgment as to the Eighth Amendment claim of Plaintiff, Bernard B. Pertee ("Pertee") for deliberate indifference to serious medical needs. Pertee asked for and received additional time in which to file a response. The Court has reviewed the memoranda from all parties.

I.

Pertee is a former inmate of the Louisville Metro Corrections Department. Sidebottom is its deputy director. By Memorandum Opinion dated November 3, 2004, the Court permitted the *pro se* complaint against Kevin Sidebottom and Defendant, Ann Elizabeth Hall, in their individual capacities, as a claim of deliberate indifference to a serious medical need in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

The complaint alleges that Pertee is legally blind and has glaucoma. On June 17, 2004, Pertee was transported from a Las Vegas, Nevada jail to the Louisville Metro Corrections Department ("Corrections") with his prescription eye drops, and these eye drops were given to Corrections. Pertee was denied these eye drops, and then was given the wrong eye drops by

medical staff on June 26, 2004. Sidebottom's first contact with Pertee occurred while he was making rounds in the jail. Pertee told Sidebottom that he had some kind of eye condition and discussed his concern over not being provided his eye drops. Sidebottom contacted the jail medical department and directed its acting head, Director of Nursing Brown, to come to the area to see Pertee. Sidebottom observed Brown's arrival and meeting with Pertee. In a later telephone conversation, Sidebottom received information from Brown that the medical department had offered Pertee the eye drops, but Pertee had refused the drops because the bottle was a different color than what he thought it should have been. Brown said the eye drops were the same, except that the eye drops the jail was giving to Pertee were a generic form. Brown assured Sidebottom that the eye drops were being offered to Pertee at every "med pass," that Pertee was scheduled to see the doctor, and that everything was taken care of.

Sidebottom spoke with Pertee once more while making rounds at the Hall of Justice portion of the jail and Pertee complained only about inadequate access to a jail typewriter. Sidebottom had no further contact or communication with Pertee either in person or by correspondence. Sidebottom never received any notes, grievance, or other letters from Pertee. Sidebottom was never made aware of any court orders concerning Pertee's medical care. Sidebottom had no involvement in Pertee's housing assignments or the processing of his inmate grievance.

Pertee's Corrections medical chart consists of 58 pages. A Corrections Progress Note dated June 17, 2004 indicates that Corrections obtained information from the Clark County Jail in Las Vegas, Nevada that Pertee had been previously prescribed Timolol Maleate ophthalmic solution. A Corrections intervention note dated June 18, 2004 indicates that Pertee's

medications were verified "per the RX bottle in property." The medications were referred to the jail physician. A Physician Order dated June 22, 2004, indicates the jail physician prescribed Pertee Timolol Maleate ophthalmic solution, 0.25%. A later progress note dated August 20, 2004 states, "M.D. made aware of I/M's refusal of eye drops."

A Consultation Request contained in Pertee's medical chart indicates an off-site clinic appointment was made at the University of Louisville Lyons Primary Eye Care Clinic for September 9, 2004. In the section of the Consultation Request marked, "Describe Signs and Symptoms Suggesting Diagnosis," Corrections medical staff stated, "glaucoma, unsure of meds and dose please evaluate."

The Lyons Eye Clinic noted that Pertee had refused the Timolol 0.25% at the jail due to "stinging." The Lyons Eye Clinic prescribed Timoptic 0.5% ophthalmic solution for Pertee's glaucoma. In a Physician's Order dated September 9, 2004, the Corrections jail physician substituted the generic form, Timolol Maleate 0.5%.

II.

The Eighth Amendment analysis requires a plaintiff to establish both a sufficiently serious deprivation and a sufficiently culpable state of mind, known as the "objective" and "subjective" component. *Wilson v. Seiter*, 501 U.S. 294 (1991). Ultimately, the Eighth Amendment requires a plaintiff to demonstrate official misconduct or omission that is "repugnant to the conscience of mankind." *Estelle v. Gamble*, 429 U.S. 97 (1976).

As to the subjective component, the United States Constitution is not implicated by negligence, malpractice, or even gross negligence, but only by conduct, at a minimum, that amounts to deliberate indifference. *Estelle, supra, Farmer v. Brennan*, 511 U.S. 835 (1994).

3

The deliberate indifference standard requires a plaintiff to plead and prove that a defendant "knows of and disregards an excessive risk to inmates' health or safety." *Farmer*, 511 U.S. at 835-37. The deliberate indifference standard requires a plaintiff to prove that an official acted with criminal recklessness. *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994).

The focus of the objective component is whether there was a sufficiently serious deprivation, as opposed to merely inquiring whether an inmate suffered a serious medical condition. *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001), *Miller v. Michigan Department of Corrections Health Care Providers*, 986 F.Supp. 1078 (W.D. Mich. 1997); *See also Blackburn v. Kalamazoo*, 390 F.3d 890 (6th Cir. 2004). For example, in *Miller*, although an inmate had a serious medical condition, incontinence of bowel and bladder, the delay in supplying Attends undergarments over a three-day period was not a serious deprivation of a "serious medical need" because there were no serious adverse effects resulting from the delay. *Id.*

Further, the Sixth Circuit has stated that, in order to establish a sufficiently serious deprivation, "an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier*, at 742, citing *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1188 (11th Cir. 1994); *Craw v. Gray*, 159 F.Supp.2d 679, 684 (N.D. Ohio 2001).

"The seriousness of the unmet medical need can only be evaluated in light of the effect of the delays." *Miller, supra* at 1080. Only delays that result in a worsening of a medical condition, or where an inmate suffers "a life-long handicap or permanent loss," or where the

4

delay was tantamount to the wanton infliction of pain will result in the medical need being properly characterized as "serious." *Id.* at 1080-81. The plaintiff bears the burden of proving both a serious medical need and deliberate indifference.

Here, Pertee has produced no evidence that he has suffered adverse consequences from not immediately receiving his eye drops. Pertee has been taking eye drops for his glaucoma for over twenty years. The Court has no evidence that the recent events have caused his medical condition to worsen in any observable fashion. Also, there is no evidence that Sidebottom failed to follow up on a legitimate request. Pertee actually received drops though he complains that the drops were the wrong strength. No evidence suggests a subjective intent to deny care. These facts will not support a claim of deliberate indifference.

The Court should not impose liability against an official merely based on an employment relationship. *Monell v. New York Department of Social Services*, 436 U.S. 658 (1978), *Rizzo v. Goode*, 423 U.S. 362 (1976). A plaintiff must present sufficient evidence that the supervisor was personally involved, or approved, encouraged, or knowingly acquiesced in the conduct of his subordinates. *Bellamy v. Bradley*, 729 F.2d 416 (6th Cir. 1984). Thus, Pertee must present evidence establishing a direct affirmative link between the alleged unconstitutional conduct and the supervisory defendants. *Hays v. Jefferson County*, 668 F.2d 869, 872 (6th Cir. 1982); *Monell v. New York Department of Social Services*, 436 U.S. 658 (1978), citing *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976). A plaintiff must present evidence creating a jury question that the conduct of a supervisory official amounted to deliberate indifference to the constitutional rights of individuals, in a particularized sense. *Hays, supra*; *see also Doe v. City of Roseville*, 296 F.3d 431, 439-441 (6th Cir. 2002). The Court finds no such evidence here.

Pertee mentions that a "District Court" issued numerous orders requiring Sidebottom to provide eye drops. Pertee presents no actual evidence of such orders and it is unclear how such an order might have arisen.

The Court will enter an order consistent with this Memorandum Opinion.

cc: Bernard Bruce Pertee, *Pro Se*
    Counsel of Record